1
2
3
4
5
6
7
8
9
10
11

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

12  NEVADA RESTAURANT SERVICES,
    INC. D/B/A DOTTY'S, *et al*.,

13      Plaintiffs,

14  v.

15  CLARK COUNTY, *et al*.,

16      Defendants.

Case No. 2:11-CV-00795-KJD-PAL
Consolidated with 2:11-CV-00824-KJD -PAL

**ORDER**

17

18      Before the Court is the Motion for Partial Judgment on the Pleadings (#19) of Defendant

19  Clark County and the Board of County Commissioners of Clark County (collectively "Defendants"

20  "the County" or "the Board"). Plaintiff Nevada Restaurant Services, Inc. d/b/a Dotty's ("Dotty's")

21  filed an opposition (#22) and the County filed a reply (#28).

22      Also before the Court is the County's Motion to Dismiss (#10). Plaintiff Jackpot Joanies FP,

23  LLC filed an opposition (#23) and the County filed a reply (#29).

24  I. Background

25      The Plaintiffs in this consolidated proceeding own gaming and drinking establishments in

26  Clark County that operate under "Class A" gaming licenses.  These licenses "permit the operation of

1  a total of fifteen or fewer slot machines incidental to the primary business at the establishment

2  wherein the slot machines are to be located."  Clark County Code (the "Code")  § 8.04.040(B)(3)

3  (emphasis added).  Plaintiffs operate their businesses in neighborhood locations such as strip malls,

4  and feature a "living room" atmosphere rather than a traditional tavern setting. Unlike many

5  traditional taverns, Plaintiffs' businesses do not have bars or structurally embedded gaming

6  machines.  Instead, alcohol is served directly to customers or ordered from behind a low counter, and

7  the slots are free-standing and arranged in an open lounge environment. This business model

8  generally requires many fewer employees than the more traditional tavern model.  Plaintiffs'

9  businesses have been expanding and they now operate in dozens of locations.

10        Because Plaintiffs operate with limited gaming licenses which are intended only to provide

11 incidental gaming, their business model became controversial. The Board of County Commissioners

12 (the "Board") received complaints that gaming was a substantial portion of Plaintiffs' business and

13 that Plaintiffs' businesses were operating more like slot arcades than traditional taverns.  According

14 to some critics, slot arcades do not provide the employment and other benefits and services

15 frequently required of gaming operators with unrestricted licenses.  Some members of the Board

16 believed that Plaintiffs were misusing their licenses or taking advantage of a loophole in the

17 restricted license or at least had potential to do so.

18         On December 21, 2010, the County approved a 70-day moratorium on new tavern liquor

19 licenses in Clark County while the issue was addressed.  On February 11, 2011, the County noticed

20 to the public three alternative amendments to the County's tavern laws which were designed to

21 address the questions related to the controversial use of restricted gaming licenses in taverns.

22 Commissioner Sisolak, who had prepared one of the proposed amendments governing taverns with

23 Class A gaming licenses, modified his version and made it available to the public on February 14,

24 2011.  A fourth version proposed by Commissioner Giunchigliani was made public on February 15,

25 and revised on March 1. On February 25, 2011, the Clark County Department of Business License

26

1   distributed a document in a grid format outlining the various versions of the ordinance amendments

2   and the key points of each.

3       In response to concerns raised by Plaintiffs, the County released a new version of the

4   amended ordinance outlining the proposed changes on March 4, 2011, and the Department of

5   Business License issued a list of answers to "frequently asked questions" on March 21, 2011.  The

6   County allowed public comments until March 28, 2011 and held a public hearing on April 5, 2011.

7       At the hearing many members of the community spoke for and against the proposed changes,

8   including tavern owners, neighborhood associations, and private individuals.  Plaintiffs had the

9   opportunity to be heard and exercised that right by giving lengthy statements.  Plaintiffs were

10  represented by counsel at the hearing and submitted both written and oral objections to the

11  amendments.

12      Following the public comments, the members of the Board held a public debate on the

13  proposed amendments in order to reach a satisfactory compromise.  The compromise version of the

14  amendment passed by a vote of 5-2 and required, *inter alia*, that taverns operating under Class A

15  limited gaming licenses are required to have a bar and at least eight slot machines embedded in the

16  bar, and that taverns that were licensed prior to April 22, 1990 were exempted from the new

17  requirement.  The County drafted an ordinance reflecting the decision made by the Board and this

18  version (the "Ordinance") went into effect on April 19, 2011.

19      Plaintiffs each filed suit separately and consolidated their actions on October 20, 2011

20  (2:11-cv-00824-KJD-PAL Dkt. #12).  The County moved for dismissal of Plaintiffs' causes of action

21  for violation of the Procedural Due Process Clause, Substantive Due Process Clause, Equal

22  Protection Clause and 42 U.S.C. § 1983.

23  II. Discussion

24      A. Motion for Judgment on the Pleadings

25      Fed. R. Civ. P. 12(c) is "functionally identical" to Rule 12(b)(6), and the "same standard of

26  review" applies to a motion brought under either rule.  Cafasso v. General Dynamics C4 Systems,

1  Inc.,637 F.3d 1047, 1054 n.4 (9th Cir. 2011).  Judgment on the pleadings or dismissal under Rule 12

2  is appropriate when, even if all material facts in the pleading under attack are true, the moving party

3  is entitled to judgment as a matter of law. Hal Roach Studios, Inc. v. Ricard Feiner & Co., Inc., 896

4  F.2d 1542, 1550 (9th Cir.1989).

5          To survive motions of this type, a party must show more than "labels and conclusions" or a

6  "formulaic recitation of the elements of a cause of action." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949

7  (2009). Instead, the "complaint must contain sufficient factual matter, accepted as true, to 'state a

8  claim to relief that is plausible on its face.'" Id.  Plausibility, in the context of a motion under Rule

9  12, means that the plaintiff has pleaded facts which allow "the court to draw the reasonable inference

10  that the defendant is liable for the misconduct alleged." Id.  The Iqbal evaluation illustrates a two-

11  prong analysis.  First, the Court identifies "the allegations in the complaint that are not entitled to the

12  assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely

13  conclusory. Id. at 1949–51.  Second, the Court considers the remaining factual allegations "to

14  determine if they plausibly suggest an entitlement to relief." Id. at 1951.  If the allegations state

15  plausible claims for relief, such claims survive. Id. at 1950.

16          B. Procedural Due Process

17          Plaintiffs seek to recover for violations of the Procedural Due Process Clause of the

18  Fourteenth Amendment.[1]  To analyze procedural due process claims, courts conduct a two-step

19  inquiry to determine 1) "whether there exists a liberty or property interest which has been interfered

20  with by the State" and 2) "whether the procedures attendant upon that deprivation were

21

22  _____

23          [1] In their Complaints, Plaintiffs pled their constitutional claims as individual causes of action and then realleged
    the same as "Violation of 42 U.S.C. § 1983." § 1983, also known as the Civil Rights Act of 1871, provides a private

24  cause of action against state actors, including municipalities, for violation of rights protected by the United States
    Constitution. Monell v. Dept. of Social Services of New York, 436 U.S. 658, 701 (1978). Each of Plaintiffs' federal

25  constitutional claims is made pursuant to § 1983. However, "that section is not itself a source of substantive rights, but a
    method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal

26  statutes that it describes." Baker v. McCollan, 443 U.S. 137, 145 (1979).  Accordingly, the sixth cause of action is a
    nullity.

4

1  constitutionally sufficient." <u>Kentucky Dept. of Corrections v. Thompson</u>, 490 U.S. 454, 460 (1989)

2  (citations omitted).

3          1. Property Interest

4        A threshold requirement to a procedural due process claim is the showing of a fundamental

5  liberty or property interest protected by the Constitution. <u>Enquist v. Oregon Department of</u>

6  <u>Agriculture</u>, 478 F.3d 985, 997 (9th Cir.2007).  This matter deals with a property interest.  Property

7  interests are not created by the Constitution but "by existing rules or understandings that stem from

8  an independent source such as state law rules or understandings that secure certain benefits and that

9  support claims of entitlement to those benefits." <u>Thornton v. City of St. Helens</u>, 425 F.3d 1158, 1164

10  (9th Cir. 2005). "'To have a property interest in a benefit, a person clearly must have more than an

11  abstract need or desire' and 'more than a unilateral expectation of it. He [or she] must, instead, have

12  a legitimate claim of entitlement to it.'" <u>Town of Castle Rock v. Gonzales</u>, 545 U.S. 748, 756 (2005)

13  (quoting <u>Board of Regents of State Colleges v. Roth</u>, 408 U.S. 564, 577 (1972)). The Supreme Court

14  has held that "a benefit is not a protected entitlement if government officials may grant or deny it in

15  their discretion" and that a property interest arises only when conferral of the benefit is truly

16  mandatory. <u>Id.</u> at 545 U.S. 756; <u>see also</u> <u>Foss v. National Marine Fisheries Service</u>, 161 F.3d 584.588

17  (9th Cir. 1998) (property interest exists where "regulations establishing entitlement to the benefit

18  are... mandatory in nature.").  The expectation of entitlement is determined largely by the language of

19  the law governing the benefit.  <u>Wedges/Ledges of Cal. v. City of Phoenix</u>, 24 F.3d 56, 62 (9th Cir.

20  1994).

21        The County's Code of Ordinances, the relevant law governing gaming licenses, states that

22  "the operation [of a] gambling facility, when authorized by such license, is a privileged business

23  subject to regulations." Code § 8.04.020(A). The Code also states:

24          These regulations define business license department procedure and regulate gaming
           operations within the jurisdiction of the board, but do not in any degree limit the

25          general power of the board to grant or deny applications for licenses and to impose
           conditions, limitations and restrictions upon a license or to restrict, revoke or suspend

26

1       a license for cause after hearing, or to immediately suspend or limit a license in an emergency. These regulations are to be liberally interpreted so as to grant the board

2       broad final discretion in all licensing matters.

3       § 8.04.020(C).

4           Plaintiffs argue that they have a property interest in their existing licenses,[2] and that since

5       they have already been granted the licenses, the imposition of additional conditions prior to renewal

6       of the licenses amounts to a "back-door revocation of [Plaintiffs'] existing, duly-granted licenses."

7           The Code plainly states that the Board has general power, without limits, to "impose

8       conditions" on the license without any hearing. Code § 8.04.020(C).  Since the Board has discretion

9       to impose conditions, a licensee does not have an expectation of entitlement to a license free from the

10      imposition of new conditions.  Conversely, the Code's hearing and cause requirements shows that

11      restriction, suspension, or revocation of existing licenses are not discretionary. See Burgess v. Storey

12      County Bd. of Com'rs, 116 Nev. 121, 992 P.2d 856 (Nev. 2000) ("Because the revocation of a

13      brothel license in Storey County requires a hearing and a showing of good cause, Burgess had a

14      reasonable expectation of entitlement to his brothel license.") In other words, Plaintiffs have a

15      legitimate claim of entitlement to their licenses only when the County acts to "restrict, revoke or

16      suspend" their gaming licenses.  No entitlement is affected when the County imposes reasonable

17      conditions in order to renew a license because renewal free from new conditions is not mandatory.

18           Plaintiffs conclusorily allege that the new conditions are a "back-door revocation."  If the

19      Court accepted Plaintiffs' argument then the Board's discretion to impose conditions would be

20      eviscerated, since any unhappy licensee could make the same argument.  The Code gives the Board

21      discretionary authority to impose conditions.  Plaintiffs have not pled facts showing that conferral of

22      a renewed license free of new conditions is mandatory and so do not have a property interest in their

23

_____

24         [2] Plaintiffs assert that this case is "not about the denial of an application for a license." (Oppo. at 10.) To the extent Plaintiffs assert that the 70-day moratorium on new licenses constituted a deprivation of due process, they have

25      failed to state a claim. Plaintiffs have failed to cite authority indicating a property interest in a pending license.  See

26      Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency, 535 U.S. 302, (2002) (holding that moratoria pending land-use planning decisions do not constitute takings).

1  licenses that is affected by the Board's action here.  Accordingly, Plaintiffs have failed to plead a

2  plausible claim under the Procedural Due Process Clause.

3                2.  Sufficiency of Procedure

4         Although Plaintiffs have failed to show a property interest, the Court will also examine their

5  claim that the Procedural Due Process Clause was violated by deficient procedure. Procedural due

6  process requires that a deprivation of life, liberty, or property "be preceded by notice and opportunity

7  for hearing appropriate to the nature of the case." Mullane v. Central Hanover Bank & Trust Co., 339

8  U.S. 306, 313 (1950).  The fundamental requirement of due process is the opportunity to be heard "at

9  a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333.  Due

10 process is a flexible concept that "calls for such procedural protections as the particular situation

11 demands." Id. at 334, (1976) (citing Morissey v. Brewer, 408 U.S. 471, 481 (1972)).

12        The Ninth Circuit has set forth a "rule of thumb" that where the "action complained of is

13 legislative in nature, due process is satisfied when the legislative body performs its responsibilities in

14 the normal manner prescribed by law." Halverson v. Skagit County, 42 F.3d 1257, 1260 (9th

15 Cir.1995) (internal quotation marks omitted). However, the Ninth Circuit has also held that "[i]t is

16 axiomatic ... that not every violation of state law amounts to an infringement of constitutional

17 rights." Samson v. City of Bainbridge Island, 683 F.3d 1051, 2012 WL 2161371 (9th Cir. 2012).

18 (citations omitted).  A plaintiff does not have a federal due process claim where a local agency enacts

19 a policy without following state law procedural requirements unless the procedure is also required by

20 the federal constitution. Jacobs v. Clark County School Dist., 526 F.3d 419, 441 (9th Cir. 2008)

21 (holding that failure to consult parents before instituting school policy may have violated state law,

22 but was not a Due Process Clause violation); see also Pro–Eco, Inc. v. Bd. of Comm'rs of Jay

23 County, Ind., 57 F.3d 505, 514 (7th Cir.1995) (alleged violation of state procedural statute relating to

24 passage of ordinance does not violate the Constitution).

25        It is undisputed that Plaintiffs received notice of the key provisions of draft proposals that

26 were being considered, received notice of the official hearing, had an opportunity to participate in

1   preparation of the business impact statement, and appeared with their counsel and participated in the

2   hearing on April 5, 2011.  Notwithstanding these facts, Plaintiffs contend that the process they were

3   afforded prior to passage of the Ordinance was not just insufficient, but "fundamentally unfair."[3]

4   Plaintiffs base this contention on an alleged failure to comply with various provisions of state law

5   including NRS § 237.080 which sets forth specific requirements for preparation of a business impact

6   statement, and because the final version of the ordinance debated and passed at the April 5, 2011

7   meeting was not identical to the proposed amendments which were circulated prior to the meeting.

8          The facts as pled by Plaintiffs show, at most, minor and technical violations of state

9   procedural statutes and do not show that any of the procedures alleged to have been violated were

10   also constitutionally required. Jacobs, 526 F.3d at 441. Plaintiffs' other contention – that the notice

11   given was defective because the proposed amendment debated at the meeting and eventually passed

12   was not identical to those circulated prior to the meeting – seeks to impose an impractically high

13   standard of notice on legislative bodies. Plaintiffs cite no authority suggesting that notice of every

14   possible permutation of an ordinance is constitutionally required to satisfy due process.  In light of

15   Plaintiffs' acknowledgment that the County provided them with notice of key provisions, versions of

16   the proposed amendments, and a list of frequently asked questions, Plaintiffs fail to plead facts

17   showing a plausible constitutional violation. Plaintiffs were given appropriate notice and a

18   meaningful opportunity to be heard.  The situation presented here did not require more process.[4]

19   Accordingly, Plaintiffs' claim that the process was constitutionally insufficient also fails.

20

21   _____

22          [3] Dotty's pleadings contain several exaggerations and instances of charged language, including incessantly
     referring to the Ordinance as the "anti-Dotty's law" or "anti-Dotty's ordinance" and describing its passage as part of an
23   "assault" and an "anti-Dotty's crusade."  Further, Dotty's opposition disrespectfully refers to one of opposing counsel's
     arguments as "utter nonsense." The Court cautions Dotty's counsel that overly dramatic language of this type is unhelpful
24   to the Court in reaching a just result.

25          [4] Even if the imposition of the new conditions affected a property interest, in situations like this, where the
     private interest is purely financial, there is an entitlement to less procedure. See Brewster v. Board of Educ. of Lynwood
26   Unified School Dist., 149 F.3d 971, 986 (9th Cir. 1998) (employee threatened with reduction in pay was entitled to less
     procedure than employee threatened with termination).

1          C. Substantive Due Process

2          The constitutional guarantee of substantive due process prevents the government from

3  engaging in conduct that "shocks the conscience" or interferes with rights "implicit in the concept of

4  ordered liberty." United States v. Salerno, 481 U.S. 739, 742 (1987) (internal citations omitted).

5  Substantive due process provides no basis for overturning validly enacted laws unless they are

6  "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals,

7  or general welfare." Spoklie v. Montana, 411 F.3d 1051 (9th Cir. 2005); see also Richardson v. City

8  and County of Honolulu, 124 F.3d 1150, 1162 (9th Cir. 1997).  Whether the Ordinance is the only or

9  best approach is irrelevant.  Courts will not act as a "super-legislative" body to question the wisdom

10  of otherwise constitutional acts by the Board.  Autotronic Systems, Inc. v. City of Coeur D'Alene,

11  527 F.2d 106, 108 (9th Cir. 1975).

12          1.  The Law is Related to Public Welfare

13          Plaintiffs allege no facts that show the County's actions were irrational or that County could

14  have had no legitimate reason for its decision. Plaintiffs argue that the "only one real purpose" of the

15  law is to move their customers to competitors.  In response, the County states that "Clark County

16  determined that tavern businesses, that are not full-fledged casinos, pose a detriment to the health,

17  safety and welfare of the community when the gaming aspect of the business is paramount to selling

18  alcohol."

19          The County has a legitimate interest in promulgating ordinances that facilitate the proper use

20  of gaming licenses.  Regulations aimed at preventing misuse of restricted licenses and closing

21  loopholes in licenses that provide only for "incidental" gaming are well within the County's purview.

22  The County also has an interest in requiring that businesses with the privilege of holding a gaming

23  license provide employment, services, and amenities to the community. Further, alcohol and

24  gambling have significant public health and welfare implications, and the County has a legitimate

25  interest in ensuring that both activities are conducted in a sustainable and safe manner.  The Court

26  will not second guess the County's determination that taverns operating under limited gaming

9

1    licenses should comply with certain physical requirements, including having eight bar-top gaming

2    devices, to enhance public welfare.  Accordingly, Plaintiffs' substantive due process claim fails.

3                    2. Retroactive Application is Appropriate

4            Plaintiffs also argue that the law violates due process because it is retroactive.  The

5    Constitution does not prohibit retroactive legislation, and retroactive laws, particularly in an

6    economic context, are routinely sustained by the Courts.  See Licari v. C.I.R., 946 F.2d 690, 693 (9th

7    Cir. 1991) Absent violation of a specific constitutional provision, courts will up hold "the retroactive

8    aspects of economic legislation, as well as the prospective aspects" if they meet the test of due

9    process.  General Motors Corp. v. Romein, 503 U.S. 181, 191 (1992) (citations omitted).  Therefore,

10   retroactive legislation does not violate substantive due process, "[p]rovided that the retroactive

11   application of a statute is supported by a legitimate legislative purpose furthered by rational

12   means. . . ."  Bowers v. Whitman, 671 F.3d 905, 916-917 (9th Cir. 2012); see also Gadda v. State Bar

13   of Cal., 511 F.3d 933, 938 (9th Cir. 2007) (retrospective economic legislation need only survive

14   rational basis review in order to pass constitutional muster).  For example, in Hotel & Motel Ass'n.

15   of Oakland v. City of Oakland, a new city ordinance reclassified certain existing hotels operating

16   under a "non-conforming use" classification in a way that required them to comply with certain

17   maintenance, habitability, security, and record-keeping standards.  The Ninth Circuit held that the

18   reclassification did not violate the substantive due process rights of existing businesses even though

19   "continued operation is conditioned on a business's compliance with the new regulations" since the

20   new regulations were related to a legitimate government interest.  344 F.3d 959, 968 (9th Cir. 2003).

21   There is no due process violation where "it is at least fairly debatable that the [governing body's]

22   conduct is rationally related to a legitimate governmental interest." Halverson v. Skagit County, 42

23   F.3d 1257, 1262 (9th Cir. 1994).

24           As set forth above, the Ordinance is rationally related to the legitimate government purpose

25   of ensuring proper use of Plaintiffs' licenses, which provide for "incidental" gaming only.  Although

26   continued operation of Plaintiffs' businesses is conditioned on compliance with the new regulations,

1   the retroactive aspect of the law is rationally related to the County's legitimate interest in enforcing

2   the long-established restrictions on gaming licences.  Plaintiffs do not offer anything to show that the

3   County lacked a rational basis for enacted the retroactive provision of the law, and according the

4   Court "may not question its judgment." Spoklie, 411 F.3d at 1059.  Accordingly, the Ordinance's

5   retroactive application does not violate substantive due process.

6                       3. Additional Authority Under the Twenty-first Amendment

7          Under the Twenty-first Amendment, governments have authority in relation to drinking

8   establishments that is beyond the general welfare power because states have the power to prohibit the

9   sale of alcohol.  This broad authority empowers local governments to "impose an almost limitless

10  variety of restrictions" on these establishments.  Walker v. City of Kansas City, Mo., 911 F.2d 80, 91

11  (8th Cir. 1990) (citing California v. LaRue, 409 U.S. 109, 111-12 (1972)).  Similarly, governments

12  have expansive authority in relation to gambling because it implicates no constitutionally protected

13  right and is a "vice" activity that can be "banned altogether."  United States v. Edge Broadcasting

14  Co., 509 U.S. 418 (1993).

15         Plaintiffs' argument that the Ordinance violates substantive due process carries little weight

16  since Plaintiffs' businesses provide both alcohol and gambling.  These activities are subject to

17  "almost limitless" restriction by the County.  Plaintiffs provide no authority suggesting that the

18  County exceeded its sweeping power to regulate alcohol and gaming when it passed the Ordinance.

19  Further, Plaintiffs have provided nothing to show that the "almost limitless" authority cannot be used

20  to pass reasonable retroactive legislation.  Accordingly, Plaintiffs do not state a plausible claim for

21  violation of their substantive due process rights.

22         D. Vagueness

23         A statute may violate the Due Process Clause if it is impermissibly vague. A facial vagueness

24  challenge outside the context of the First Amendment "present [s] a hurdle that is difficult for the

25  [plaintiff] to scale."  Hotel & Motel Ass'n of Oakland v. City of Oakland, 344 F.3d 959, 971 (9th

26  Cir.2003) "[A] party challenging the facial validity of an ordinance on vagueness grounds outside the

11

1   domain of the First Amendment must demonstrate that 'the enactment is impermissibly vague in all

2   of its applications.'" Id. (quoting Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455

3   U.S. 489 (1982)).  A statute can be impermissibly vague for either of two independent reasons: (1) "it

4   fails to provide persons of ordinary intelligence a reasonable opportunity to understand what conduct

5   it prohibits," or (2) "it authorizes and encourages arbitrary and discriminatory enforcement." Hill v.

6   Colorado, 530 U.S. 703, 732 (2000).

7          Plaintiffs argue that the Ordinance is impermissibly vague for two reasons: (1) because it is

8   unclear whether a tavern is required to have a restaurant, and (2) because it is unclear whether a

9   tavern is required to have a bar.  Plaintiffs have failed to plead facts showing that a person of

10  reasonable intelligence would misunderstand the requirements of the Ordinance. The plain language

11  of the statute draws a distinction between a tavern, where a bar and a restaurant are permissive, and a

12  "tavern making an application for a Class A Slot Machine License," where they are not.   Plaintiffs'

13  claim of confusion is not plausible since the Ordinance unambiguously states that only taverns that

14  apply to be operated in connection with the Class A gaming license are required to have a bar and

15  restaurant.  Plaintiffs have failed to plausibly plead vagueness and accordingly, the vagueness

16  challenge fails.

17          E. Equal Protection

18          The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny

19  to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

20  The Equal Protection Clause requires the government to treat all similarly situated persons alike. City

21  of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985).  A municipal law does not

22  violate the Equal Protection Clause, "[i]f the ordinance does not concern a suspect or semi-suspect

23  class or a fundamental right, we apply rational basis review and simply ask whether the ordinance is

24  rationally-related to a legitimate governmental interest." Honolulu Weekly, Inc. v. Harris, 298 F .3d

25  1037, 1047 (9th Cir.2002) (internal quotation marks and citation omitted).  Disparate government

26  treatment will survive rational basis scrutiny "as long as it bears a rational relation to a legitimate

1   state interest." <u>Patel v. Penman</u>, 103 F.3d 868, 875 (9th Cir.1996).  In order to state a claim for an

2   equal protection violation, a plaintiff must plead facts that, if true, would show that the governing

3   body acted irrationally and in a manner "unrelated to the achievement of any combination of

4   legitimate purposes." <u>Vance v. Bradley</u>,  440 U.S. 93, 97 (1979).

5          The parties agree that Plaintiffs are not part of a protected class.  Plaintiffs complain that the

6   Ordinance violates the equal protection clause by exempting taverns licensed prior to December 22,

7   1990 from the new requirements.  The County argues, based transcripts attached to Plaintiffs'

8   Complaint, that this provision was included after public debate in order to prevent hardship to long-

9   established businesses and out of concern that older taverns might not have the necessary physical

10  space to make the needed changes.

11         Plaintiffs claim that the County's justification does not make sense because older businesses

12  have had longer to repay capital costs and that, if anything, new taverns should be exempted because

13  a 20-year old tavern "likely needs to update and modernize its facilities and equipment anyway."

14  (Dkt. #22 at 28.)  By advancing this speculative argument, Plaintiffs actually illustrate how the

15  Ordinance is related to the legitimate government interest of mitigating the impacts of new regulation

16  on businesses based on how long they have been operating.  It is also related to the legitimate

17  government interests discussed <i>supra,</i> especially facilitating proper use of restricted gaming licences.

18  While Plaintiffs disagree with the determination made by the County about how to advance this

19  interest and make conclusory allegations about an improper motive,[5] they fail to plead facts showing

20  that the County's actions were unrelated to a legitimate government interest and irrational.  Similar

21  grandfather provisions have survived rational basis scrutiny.  <u>See, e.g.</u> <u>City of New Orleans v. Dukes,</u>

22  427 U.S. 297, 303 (1976) (upholding ban on all street vendors except those who had operated in city

23

24         [5] Plaintiffs cite <u>Squaw Valley Dev. Co. v. Goldberg</u>, 375 F.3d 936, 944 (9th Cir.2004) in support of their
    argument that their allegations of an improper motive are sufficient to allow the equal protection claim to proceed to trial.

25  However, <u>Squaw Valley</u> was a so-called "class of one" case where the government action was targeted at a specific
    landowner and where there was selective enforcement.  In this case, Plaintiffs are not a "class of one" and the Ordinance

26  has general application.

1   for more than 20 years in order to preserve character of neighborhood).  Accordingly, Plaintiffs have

2   not pled facts sufficient to state a claim for an equal protection violation.

3        F. Cause of Action Under Nevada Constitution

4        Plaintiffs pled their due process and equal protection claims under both federal and state law.

5   These rights under the Nevada Constitution are identical to those under federal law.  Since the Court

6   has dismissed the equal protection and due process claims under federal law, they are similarity

7   dismissed under the Nevada Constitution.

8   III. Leave to Amend

9        Plaintiffs have requested leave to amend in the event that the Court grants the Motion for

10  Judgment on the Pleadings.  Courts should "freely give" leave to amend when there is no "undue

11  delay, bad faith[,] dilatory motive on the part of the movant ... undue prejudice to the opposing party

12  by virtue of ... the amendment, [or] futility of the amendment ..." Fed.R.Civ.P. 15(a); Foman v.

13  Davis, 371 U.S. 178 (1962). Generally, leave to amend is only denied when it is clear that the

14  deficiencies of the complaint cannot be cured by amendment. See DeSoto v. Yellow Freight Sys.,

15  Inc., 957 F.2d 655, 658 (9th Cir.1992).  Given this generous standard, the Court is compelled to

16  allow Plaintiffs to amend their Complaint.  Should Plaintiffs choose to amend their Complaint, they

17  must do so within twenty one days of entry of this Order.

18  IV. Summary and Conclusion

19       A motion for judgment on the pleadings requires the Court to determine if Plaintiffs have

20  stated plausible facts which show that they are entitled to relief.  Plaintiffs have failed to do so.

21       A property interest is created when conferral of a benefit is truly mandatory.  The Clark

22  County Code gives the County discretion to impose new conditions on gaming licenses.  Plaintiffs

23  have failed to plausibly plead a that they have a valid property interest in renewal of their licenses

24  without any new conditions.  Since the Ordinance does not restrict, revoke, or suspend their licenses,

25  it does not affect a property interest.  Accordingly, Plaintiffs fail to plead a property interest giving

26  rise to a procedural due process claim.

1       Plaintiffs also allege that the County violated procedural due process by failing to give

2  sufficient notice of the proposed amendments and by failing to properly prepare a business impact

3  statement as required by state law.  The County did provide notice of the major provisions of the

4  proposed amendments. Plaintiffs have no legal support for the unrealistically high standard of notice

5  they seek to impose on the County.  Further, Plaintiffs allege only minor, technical breaches of state

6  law that do not rise to the level of constitutional violations.

7       Plaintiffs' substantive due process claims fail because the Complaint does not allege plausible

8  facts showing that the Ordinance is not rationally related to a legitimate government interest.

9  Specifically, the Ordinance is related to the County's interest in ensuring that gaming licenses are

10  used properly, requiring businesses holding gaming licenses provide employment, services, and

11  amenities to the community, and maintaining public health and welfare.  The Constitution does not

12  prohibit retroactive application of laws, so long as they are rationally related to a legitimate

13  government interest.  Further, the County has almost unlimited authority to regulate gambling and

14  alcohol.

15       Plaintiffs' claim that the law is impermissibly vague fails because the law unambiguously

16  requires a "tavern making an application for a Class A Slot Machine License" to have a bar and a

17  restaurant.

18       Finally, Plaintiffs fail to plead a plausible a equal protection violation because they allege no

19  facts showing that the County could not have a rational basis for exempting taverns licensed prior to

20  December 22, 1990 from the new requirements.

21       **IT IS HEREBY ORDERED THAT** the Motion for Partial Judgment on the Pleadings (#19)

22  of Defendant Clark County and the Board of County Commissioners of Clark County is

23  **GRANTED**.

24       **IT IS FURTHER ORDERED THAT** Defendant Clark County and the Board of County

25  Commissioners of Clark County's Motion to Dismiss (2:11-cv-00824-KJD-PAL Dkt. #10) is

26  **GRANTED**.

1    **IT IS FURTHER ORDERED THAT** Plaintiffs are granted leave to amend their Complaint.

2    Should Plaintiffs choose to amend their Complaint, they must do so within twenty one days of this

3    order.

4          DATED this 21st day of September 2012.

5

6

7    _____

8    Kent J. Dawson
     United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26